## KAHANER v. INTERNATIONAL NAV. CO.

### (Circuit Court, E. D. Pennsylvania. October 1, 1902.)

#### No. 12.

1. IMMIGRATION — DEPORTATION — CONTRACT WITH NAVIGATION COMPANY — BREACH.

Where, after a family of immigrants had been excluded by the government for a contagious disease, the steamship company agreed to become responsible for them on proper security being furnished, in accordance with a modified order by the government, but thereafter deported them without giving a reasonable time to furnish such security, the steamship company could not defend an action for damages so caused, on the ground that the deportation was an act of the law.

2. SAME—EVIDENCE—QUESTION FOR JURY.

Where a steamship company wrongfully deported a family of immigrants, for which it had agreed to become responsible on being furnished sufficient security, without giving the family a reasonable time to furnish the security, proof of such facts established a prima facie cause of action against the steamship company for the damages sustained.

Rule to take off nonsuit.

Isaac Hassler, for plaintiff.

N. Dubois Miller, for defendant.

ARCHBALD, District Judge.*   In granting the nonsuit it was assumed that the deportation of the plaintiff's wife and children was the act of the law, for which the steamship company was in no sense liable, their responsibility being merely for the breach of the alleged contract which they had made. But that is not altogether the case. The contagious cutaneous disease which was discovered on the youngest child no doubt warranted the officers of the government in excluding the family from a permanent landing, and requiring them to return to the ship which had brought them into port.   But on application to the treasury department permission was given them to stay if the steamship company would be responsible for them, the disease being of a mild and curable character, and the division of the family which would otherwise result being recognized as a serious hardship.   The matter was thus put in the direct control of the steamship company, and left open for the operation of the private arrangement which had been made already with the father.   By it, according to the evidence produced by the plaintiff, it had been agreed that, if proper security was offered the company for the care and the maintenance of the family during the time required to cure the child, the company would in turn become responsible to the government, providing a stay of deportation on that condition was granted.

Without stopping to discuss the question whether there was a consideration which would support such an agreement, which it seems to me it would not be difficult to find, the plaintiff in pursuance of it was entitled to a reasonable opportunity to comply, and if it was not given him the company would be liable.   In granting the nonsuit it was held that this liability would merely be for the breach of the contract involved, but on further consideration I think this was a mistake.   The whole matter, as I have pointed out, having been left in the hands of the parties to arrange, the company was answerable for that which subsequently happened, in violation of what it had agreed to, and, although the putting of the immigrants back onto the steamship may have been the act of the officers of the law, the subsequent taking them out of port, and across the ocean, was the act of the company, and was a wrong for which they are liable, unless it was justified.   The rigor of the law had been relieved by the clemency of the representatives of the government, and in the face of the agreement with the father, with which he was ready and anxious to comply if sufficient opportunity was given him, it cannot be said, so far as the company was concerned, that the deportation was a lawful one.   While the steamship may have been scheduled to leave that afternoon, its departure was entirely within the control of the company, and the inconvenience of delaying the necessary interval to allow proper security to be given was no greater to it

* Specially assigned.

than the hardship to this father and his family of the three-months separation which followed. Of course, I am only speaking of the case as it is now presented. When the defendants have been heard, it may appear very differently; but, taking it as it stands, it was a mistake to withdraw it from the jury, and it must therefore be tried anew.

The rule to take off the nonsuit is made absolute, and a new trial is awarded.